IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RAMONA LAIRD,                        )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )      CASE NO.: 1:16-cv-539-GMB
                                     )
AETNA LIFE INSURANCE CO., *et al.*, )
                                     )
        Defendants.                  )

## MEMORANDUM OPINION AND ORDER

Before the court is the Motion to Dismiss for Plaintiff's Failure to State a Claim (Doc. 34) jointly filed by Defendants AECOM Global II, LLC ("AECOM") and Keith Sasser ("Sasser"), and the Motion for Judgment on the Pleadings filed by Defendant Aetna Life Insurance Company ("Aetna") (Doc. 47). With the parties' briefing complete, the motions are now ripe for the court's review. After careful consideration of the parties' filings and the relevant law, the court concludes that the motion to dismiss (Doc. 34) and motion for judgment on the pleadings (Doc. 47) are due to be GRANTED in part and DENIED in part, as set forth below.

## I. JURISDICTION AND VENUE

The court has subject-matter jurisdiction over the claims in this lawsuit pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). The defendants do not contest personal jurisdiction or venue, and the court finds allegations adequate to support both.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Ramona Laird ("Ms. Laird" or "Laird") brought this action on July 5, 2016. Doc. 1. For the purposes of both a motion to dismiss and motion for judgment on the pleadings, the court must accept Laird's factual allegations as true and will recite the facts as alleged in her amended complaint (Doc. 32). AECOM employed Laird's husband, Robert Laird ("Mr. Laird"), as an Assistant Flight Commander stationed at the United States Army post at Fort Rucker, Alabama. Doc. 32 at 2. As of April 3, 2003, Mr. Laird was enrolled in the AECOM Global II Welfare Benefits Plan (the "plan"), which provided life insurance coverage. Doc. 32 at 2–3. On October 6, 2011, at the age of 69, Mr. Laird chose the "basic" coverage option under the plan, which provided a payout equivalent to his annual base salary, and elected to purchase additional coverage offering a payout equivalent to three times his base salary. Doc. 32 at 4. Mr. Laird designated Ms. Laird as the sole beneficiary. Doc. 32 at 4.

Unbeknownst to the Lairds, any payout under the plan was set to reduce to 65% once Mr. Laird turned 70 years old. Doc. 32 at 4. In 2014, at the age of 72, Mr. Laird "confirmed that his benefit elections were still set at 1 x base salary and 3 x optional to be paid to Ms. Laird at 100%." Doc. 32 at 5. The Lairds had determined that this amount of coverage would adequately provide for Ms. Laird's financial needs after her husband's death. Doc. 32 at 5. Ms. Laird alleges that a document mailed to the Lairds by AECOM in 2014, entitled "Current Benefits Summary for Robert Laird as of 01/01/2014," confirmed his coverage as well as the 100% payout, and did not indicate any reduction. Doc. 32 at 5. Though Mr. Laird had turned 70 in 2012, "the statement did not indicate that Mr. Laird's

benefits had reduced to 65%, nor did it refer Mr. Laird to any Plan document that would inform him of the reduction." Doc. 32 at 6.

Defendant Keith Sasser was AECOM's human resources manager at Fort Rucker during the time period at issue. Doc. 32 at 4. Sasser conducted an Open Enrollment session each fall, during which AECOM employees would meet with him to make benefit selections for the upcoming year. Doc. 32 at 4. Sasser served in an advisory capacity, providing the employees with information regarding the plans and operating as the "primary point of contact" for AECOM employees at Fort Rucker between 2005 and 2014. Doc. 32 at 4. During Open Enrollment in October of 2011, Sasser allegedly failed to inform Mr. Laird that his benefits would reduce to 65% once he turned 70 despite the fact that Mr. Laird was 69 at the time. Doc. 32 at 4–5. Sasser also affirmatively represented that benefits would be paid at 100% even after Mr. Laird had turned 70. Doc. 32 at 14–15.

On November 11, 2014, Mr. Laird passed away at the age of 72. Doc. 32 at 13. Two days later, Sasser and Bob Price, AECOM's director at Fort Rucker, traveled to Mr. Laird's funeral and informed Ms. Laird that "they had just realized that Mr. Laird's life insurance reduced at the age of 70." Doc. 32 at 6. Sasser stated that he sent a memorandum that day informing the other employees of the reduction. Doc. 32 at 6. Sasser then submitted the claim to Aetna, which administered claims submitted under the plan.[1] Doc. 32 at 6. Aetna paid out 65% of the policy, or $266,047.35, which was $141,466.25 less than what Ms.

---

[1] Aetna alleges that it was actually a URS employee, Melanie Der, who submitted the claim to Aetna. Doc. 47-1 at 7. Regardless of who is internally designated as the claim's "submitter," Laird clearly alleges that Sasser played an integral role in submitting the claim. *See* Doc. 32 at 6 ("Sasser initiated Ms. Laird's claim for benefits to Aetna Life at a reduced rate of 65%.").

Laird expected to receive. Doc. 32 at 6. Aetna processed the claim based on the terms of the plan and informed Ms. Laird that its decision was final. Doc. 32 at 7.

The Lairds never received the alleged Summary Plan Description ("SPD") that Aetna produced for AECOM employees. Doc. 32 at 7–8. Ms. Laird maintains that had the Lairds received the SPD indicating the reduction in benefits at age 70, they would have chosen additional coverage. Doc. 32 at 8. However, "Defendants failed to furnish Mr. Laird with a copy of the Summary Plan Description or any other Plan document that would have informed him of the benefit reduction." Doc. 32 at 8.

Laird asserts that all of the defendants—Aetna, AECOM, and Sasser—breached their fiduciary duties by "failing to furnish current, accurate, and complete Plan information that would have guided the Lairds' benefit elections." Doc. 32 at 9. Sasser, who "assumed a plan administrator role," admitted to knowledge of the defendants' failure to furnish plan information that would have informed the Lairds of the reduction, but he submitted the claim to Aetna anyway. Doc. 32 at 9–10. Additionally, Laird contends that the defendants "unlawfully failed to correct each others' [sic] breaches of fiduciary duty with regard to Mr. Laird." Doc. 32 at 10. As a result of the defendants' "misrepresentations, omissions, and breaches of fiduciary and co-fiduciary duties," Laird claims that she suffered damages in the amount of $141,466.25. Doc. 32 at 18. Moreover, Laird requests equitable relief, "including, but not limited to, surcharge, restitution, constructive trust, reformation, disgorgement, estoppel, injunctive relief, costs, interest, and attorneys' fees pursuant to 29 U.S.C. § 1132(g)(2)." Doc. 32 at 18.

On November 17, 2016, Laird filed an amended complaint (Doc. 32) naming Aetna, AECOM and Sasser as defendants. Following the filing of the amended complaint, AECOM and Sasser filed the instant motion to dismiss, while Aetna filed an answer. Docs. 34 & 40. Aetna later filed the pending motion for judgment on the pleadings. Doc. 47.

## III. STANDARDS OF REVIEW

### A.    Motion to Dismiss

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *id.*, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

### B.    Judgment on the Pleadings

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Palmer & Cay,*

*Inc. v. Marsh & McLennan Cos., Inc.*, 404 F.3d 1297, 1303 (11th Cir. 2005) (citation and internal quotation marks omitted).  The standard is functionally the same as that for a Rule 12(b)(6) motion to dismiss. *See United States v. Bahr*, 275 F.R.D. 339, 340 (M.D. Ala. 2011).  Thus, the court must accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999).

## IV.  DISCUSSION

Laird asserts two claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101, *et seq*.  Count I is for breach of fiduciary duty pursuant to §§ 1132(a)(3) and 1135(a), while Count II is a claim for statutory penalties pursuant to § 1132(c)(1)(B) for an alleged breach of the disclosure obligations as set out in § 1024(b). *See generally* Doc. 32.  The defendants have moved for dismissal or judgment on the pleadings as to both claims. *See* Docs. 34 & 47.

### A.      Timeliness of the Motion to Dismiss

As a threshold matter, Laird argues that AECOM's filing of an answer to her original complaint estops it from filing a Rule 12(b)(6) motion to dismiss her amended complaint. Doc. 45 at 3–4.  Indeed, under Rule 12, any motion to dismiss "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b).  And "the filing of an amended complaint does not automatically revive all defenses or objections that the defendant may have waived in response to the initial complaint." *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011).  However, the defendant may "plead anew in response to an amended complaint, as if it were the initial complaint, when the amended

complaint changes the theory or scope of the case." *Id.* (citation and internal quotation marks omitted).

Here, the amended complaint has materially changed both the theory and scope of the case. Laird's original complaint asserted just one count, styled as a claim for "ERISA —Recovery of Benefits Due and Breach of Fiduciary Duty." Doc. 1 at 6. It did so with citation to 29 U.S.C. § 1132(a), but no other ERISA statutory provisions. Doc. 1 at 8. As the title of the claim suggests, Laird's initial complaint expressly asserted a theory of lost benefits. Doc. 1 at 6 ("ERISA allows plan participants to bring civil actions to recover benefits due under the terms of the plan and benefits promised by the plan administrators."). She requested monetary damages in the amount of $141,466.25 in addition to "all other damages available at law, including, but not limited to, compensatory damages, punitive damages, equitable relief, costs, interest, and attorney fees." Doc. 1 at 8. The amended complaint, on the other hand, asserts two causes of action and cites to a number of ERISA's statutory provisions. Count I is a claim for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3), while Count II alleges a failure to disclose plan information in violation of 29 U.S.C. § 1024(b) brought pursuant to § 1132(c)(1)(B). *See generally* Doc. 32. Notably, the amended complaint is premised on a theory that the defendants failed to disclose crucial information, preventing the Lairds from making an informed decision regarding Mr. Laird's benefits, and does not allege that benefits were withheld according to the terms of the plan. *See* Doc. 32 at 14–15. Additionally, the amended complaint elaborates on the equitable relief Laird is seeking. Doc. 32 at 18. Thus, Laird's amended complaint is broader in scope, cites to the specific ERISA statutory

provisions on which the claims rely, and fleshes out her theory of liability. AECOM was therefore entitled to "plead anew" in response to Laird's amended complaint.[2]

## B. Section 1132(c)(1)(B)

In Count II of the amended complaint, Laird seeks statutory penalties under 29 U.S.C. § 1132(c)(1)(B) for the defendants' alleged failure to comply with the disclosure requirements set forth in 29 U.S.C. § 1024(b). The defendants contend that Laird's § 1132(c)(1)(B) claim for statutory penalties should be dismissed because Laird has not alleged that a request for plan information was ever made. Sasser and Aetna additionally argue that they cannot be liable for statutory penalties because they are not plan administrators.

ERISA is the federal statutory scheme governing certain employee pension and welfare benefit plans by "setting forth certain general fiduciary duties applicable to the management" of these plans. *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996). ERISA does so by imposing upon plan administrators certain obligations, including the duty to disclose plan information to plan participants and beneficiaries. *See* 29 U.S.C. §§ 1022 & 1024(b). Section 1132(c)(1)(B), an enforcement mechanism, states in pertinent part:

> Any administrator who fails or refuses to comply *with a request for any information* which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

---

[2] Even if the scope or theory of the case had not changed with the filing of Laird's amended complaint, the court would construe the motion to dismiss as a motion for judgment on the pleadings pursuant to Rule 12(c). *See Whitehurst v. Wal-Mart Stores East, L.P.*, 329 F. App'x 206, 208 (11th Cir. 2008).

29 U.S.C. § 1132(c)(1)(B) (emphasis added). Thus, § 1132(c)(1)(B) provides for statutory penalties in the event an ERISA plan administrator fails to provide required plan information upon request. On the other hand, § 1024(b)(1) requires administrators to furnish to participants and beneficiaries a copy of the SPD and "all modifications and changes . . . (A) within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits, or (B) if later, within 120 days after the plan becomes subject to this part." 29 U.S.C.A. § 1024(b)(1). Subsection (B) also requires administrators to furnish to plan participants and beneficiaries an updated SPD every five years in the event the SPD has been amended. *See* 29 U.S.C.A. § 1024(b)(1)(B).

The plain language of the statute compels the dismissal of Laird's claim for statutory penalties pursuant to § 1132(c)(1)(B). Section 1132(c)(1)(B) unambiguously requires a "request for any information" for the statutory penalty to be appropriate. *See* 29 U.S.C. § 1132(c)(1)(B). Laird does not claim—either in the amended complaint or in her response brief—that she or Mr. Laird ever made a request for information. Indeed, Laird cites only to § 1024's subsection (b)(1) which, as demonstrated above, does not require a request for information and instead charges plan administrators with the duty to disclose plan information upon the occurrence of certain events. Notably, Laird does not refer to subsection (b)(4), which requires administrators to furnish certain information upon written request. *See* 29 U.S.C.A. § 1024(b)(4). According to ERISA's plain language, statutory penalties may attach to a violation of § 1024(b)(4), but not to a violation of § 1024(b)(1).

Laird contends that the defendants failed to provide Mr. Laird with an SPD within

90 days of becoming a plain participant, in violation of § 1024(b)(1)(A). Doc. 32 at 19. Laird goes on to allege that Mr. Laird never received an updated SPD in violation of § 1024(b)(1)(B). Doc. 32 at 19. While these facts are sufficient to support alleged violations of § 1024(b)(1), Laird does not allege that Mr. Laird ever made a request for information, and therefore has not pleaded sufficient information to support a § 1132(c)(1) claim for statutory penalties. *See* Doc. 32 at 18–20. This conclusion comports not only with the statutory language, but with other courts' treatment of this issue. *See, e.g.*, *Rego v. Westvaco Corp.*, 319 F.3d 140, 149 (4th Cir. 2003) ("But even assuming arguendo that defendants violated § 1133 and § 1024(b)(1), it would contravene the clear text of § 1132(c)(1)(B) to choose liquidated damages as a remedy for those violations absent an active request for information by a beneficiary.") (internal quotation marks omitted); *Brown v. Aetna Life Ins. Co.*, 975 F. Supp. 2d 610, 619–20 (W.D. Tex. 2013); *Carder-Cowin v. Unum Life Ins. Co. of Am.*, 560 F. Supp. 2d 1006, 1014 (W.D. Wash. 2008) ("[W]here there has been no request for the information, courts have determined that there is no specific ERISA provision providing specific relief. . . [and] the court in its discretion may, but is not required to, provide equitable relief for a procedural violation of § 1024(b)(1).") (internal quotation marks omitted); *Otero Carrasquillo v. Pharmacia*, 382 F. Supp. 2d 300, 311–12 (D.P.R. 2005) ("A plan participant who requests that the plan administrator furnish him with information that should be provided automatically pursuant to § 1024(b)(1) triggers § 1132(c), and an administrator has thirty days to respond.").

Stymied by the statutory language, Laird turns to cases from the Ninth and D.C. Circuits in an attempt to salvage her § 1132(c)(1) claim for statutory penalties, both of

which are distinguishable from the instant case. For example, Laird cites to *Crotty v. Cook*, where the defendant argued that it could not be held liable under § 1024(b)(1) because the plaintiff never made a written request for information. *See Crotty v. Cook*, 121 F.3d 541, 547–48 (9th Cir. 1997). However, the plaintiff in *Crotty* made an oral request for the plan information at issue, and the court cited to the statutory language in § 1132(c) (requiring a "request for any information") to hold that the plaintiff's request "did not have to be in writing for the civil enforcement penalty to apply." *Id.* at 548. Similarly, Laird cites to *Davis v. Liberty Mutual Insurance Company*, which held that statutory penalties under § 1132(c) were available to plaintiffs who had not made a request for plan information in writing because § 1024(b)(1) "imposes no written request requirement." *See Davis v. Liberty Mut. Inc. Co.*, 871 F.2d 1134, 1139 (D.C. Cir. 1989).

A survey of case law in other districts reveals that plaintiffs who have not made a request for information often attempt to secure statutory damages under § 1132(c) for an alleged violation of § 1024(b)(1) by employing an argument similar to the one Laird advances here (including by citing to *Davis* and *Crotty*). With good reason, this argument is routinely rejected. *See, e.g.*, *Carder-Cowin*, 560 F. Supp. 2d at 1014 (stating that "if an administrator fails to provide information *requested*, even if orally, the administrator may be liable under 29 U.S.C. § 1132(c) for damages" in holding that statutory damages under § 1132(c) are unavailable where there is no request for information).

"This case requires us to apply settled principles of statutory construction under which we must first determine whether the statutory text is plain and unambiguous." *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009) (citing *United States v. Gonzales*, 520 U.S.

1, 4 (1997)).  "If it is, we must apply the statute according to its terms." *Id.* (citations omitted).  Laird nevertheless asks the court to read out of § 1132(c)(1)(B) the explicit requirement of a request for information.  The court declines.  Laird's claim for statutory damages pursuant to § 1132(c)(1)(B) fails to state a claim upon which relief can be granted.  Accordingly, the motion to dismiss filed by AECOM and Sasser is granted as to Count II, and the motion for judgment on the pleadings filed by Aetna is granted as to Count II.

## C.     Section 1132(a)(3)

Laird alleges in Count I that all of the defendants breached fiduciary duties by failing to inform Mr. Laird that his benefits were due to decrease from 100 percent to 65 percent by age 70. *See* Doc. 32 at 11–18.  Specifically, Laird contends that the defendants failed to provide Mr. Laird with "current, correct, and complete Plan information," in violation of 29 U.S.C. § 1024(b), and that Mr. Laird would have chosen to increase his coverage had he been aware of the reduction in benefits. Doc. 32 at 15–16.

Sections 1022 and 1024(b) require administrators to provide participants with an SPD which "shall be written in a manner calculated to be understood by the average plan participant," and must contain information regarding "circumstances which may result in disqualification, ineligibility, or denial of loss or benefits." 29 U.S.C. § 1022(b); *see also* 29 U.S.C. § 1024(b)(1).  The objective is to provide participants and beneficiaries with "clear, simple communication." *CIGNA Corp. v. Amara*, 563 U.S. 421, 437 (2011).

To that end, § 1132(a)(3) permits

a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii)

to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3). Section 1132(a)(3) thus acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that § [1132] does not elsewhere adequately remedy." *Varity*, 516 U.S. at 512. The Supreme Court has held that plaintiffs are permitted to seek individual relief under 29 U.S.C. § 1132(a)(3) for an alleged breach of fiduciary duty. *See id.* at 507–15. Indeed, individuals alleging a violation ERISA's disclosure obligations who are not able to sue under the terms of the plan pursuant to § 1132(a)(1)(B), cannot seek statutory penalties pursuant to § 1132(c)(1)(B), or otherwise have no other feasible path to relief often assert claims under § 1132(a)(3). In *Amara*, the Supreme Court posited that "it is not difficult to imagine how the failure to provide proper summary information" would injure employees, casting doubt on the proposition "that Congress would have wanted to bar those employees from relief." *Amara*, 563 U.S. at 444.

A survey of the case law from this and other circuits reveals that an alleged violation of the disclosure obligations set out in §§ 1022 and 1024(b) constitutes a breach of fiduciary duty—the "act or practice which violates any provision of this subchapter"—supporting a claim under § 1132(a)(3). *See, e.g.*, *Amara*, 563 U.S. at 432 & 438 (finding that violations of the disclosure obligations set out in §§ 1022 and 1024 form the basis for a § 1132(a)(3) claim); *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 721–23 (8th Cir. 2014) (finding a viable § 1132(a)(3) claim where the plaintiff argued that the plan administrator "breached an ERISA-imposed fiduciary duty by failing to provide [plaintiff] with a summary plan description"); *Singletary v. United Parcel Serv., Inc.*, 828 F.3d 342, 348–49 ("Because it violates an ERISA provision for a Plan Administrator not to provide a valid SPD to a

beneficiary or participant . . . it may be that a claim for failure to disclose . . . could also have been brought under [§ 1132's] subsection (a)(3)."); *Poole v. Life Ins. Co. of N. Am.*, 984 F. Supp. 2d 1179, 1189 (concluding that a plaintiff's § 1132(a)(3) claim should survive a Rule 12(b)(6) motion where the "complaint alleges that Defendants each owed fiduciary duties to Mr. Poole, that in failing to furnish him with Plan documents they breached their duties, and that he has been harmed because he entered a third-party settlement ill-advisedly"). As already stated, Laird has alleged a violation of ERISA's disclosure obligations. Thus, the court finds that Count I states a viable theory for a breach-of-fiduciary-duty claim under § 1132(a)(3).

### 1. *AECOM*

AECOM argues that Count I should be dismissed because (1) it informed Mr. Laird of the change by making the SPD available, and (2) Laird's § 1132(a)(3) claim is merely an attempt to disguise her claim for monetary damages as a claim for equitable relief. The first argument is an attempt to litigate the merits of the lawsuit at the motion-to-dismiss stage. To summarize, Laird contends that AECOM failed to disclose vital plan information, resulting in a loss that would not have occurred had AECOM fulfilled its fiduciary duty to disclose the information. In response, AECOM claims that it did provide Mr. Laird with the information indicating his benefits would reduce at age 70. *See* Doc. 34 at 13–14 ("[T]he SPD that informs all Plan participants of the reduction to 65% at age 70 . . . was available for examination at specified locations and online."). However, this is not an appropriate inquiry at the motion-to-dismiss stage for a § 1132 breach-of-fiduciary-duty claim. Instead, the court need only test the legal sufficiency of Laird's factual allegations

supporting her claim for breach of fiduciary duty under § 1132(a)(3). Laird has alleged that all of the defendants breached their duty to provide the Lairds with plan information indicating that the payout under Mr. Laird's policy was set to reduce to 65% by age 70. Doc. 15–17. She also contends that AECOM and Sasser affirmatively represented that the payout was still 100% after he had turned 70. Doc. 32 at 12–15. This is sufficient to survive a motion to dismiss.

Next, AECOM argues that Laird's claim should be dismissed because she asserts that she is entitled to "lost benefits" worth $141,466.25 when "the Plan does not provide for any benefits beyond which she has already been paid." Doc. 34 at 14. Laird correctly contends that a breach-of-fiduciary-duty claim under § 1132(a)(3) is available "where a defendant fails to disclose material Plan information and the plaintiff cannot obtain relief under the terms of the plan." Doc. 45 at 19. Laird tacitly admits that she is not seeking relief under the terms of the plan, because the terms of the plan were that Mr. Laird's benefits were to reduce to 65% at age 70. It is, instead, the failure to disclose these terms that Laird challenges.

The court must first consider the nature of Laird's request for relief in determining whether she has stated a viable claim under § 1132(a)(3). *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993); *see generally Cook v. Campbell*, 482 F. Supp. 2d 1341 (M.D. Ala. 2007). "While a participant or beneficiary may bring a claim for individualized relief pursuant to 29 U.S.C. § 1132(a)(3), relief is limited to 'appropriate equitable relief.'" *Cook*, 482 F. Supp. 2d at 1358 (quoting 29 U.S.C. § 1132(a)(3)). The term "equitable relief" refers to "those categories of relief that were typically available in equity," and does not

include compensatory damages, which are a "classic form of *legal* relief." *Mertens*, 508 U.S. at 254, 56. Whether a remedy is legal or equitable is determined by "the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (internal quotation marks omitted).

AECOM relies on *Cook v. Campbell* for the proposition that Laird is seeking monetary—and not equitable—relief. But AECOM fails to account for a key distinction between the facts in *Cook* and Laird's claim here. In short, the plaintiffs in *Cook* argued that they suffered monetary losses as a direct result of the defendant's breach of fiduciary duty. *See Cook*, 482 F. Supp. 2d at 1357–59. After a detailed analysis of the relevant case law, the court turned to the complaint to ascertain "the basis of Plaintiffs' claims and the nature of the relief sought." *Id.* at 1358. After determining that the plaintiffs alleged a breach of fiduciary duty that caused them financial loss, the court concluded that the plaintiffs failed to establish that the relief they requested was equitable because they expressly sought "monetary damages in the form of benefits owed," but did not specify the "equitable mechanism through which the monetary payment of promised benefits can be accomplished under § [1132(a)(3)]." *Id.* at 1359. Thus, the plaintiffs sought "a legal remedy which is not available" under § 1132(a)(3). *Id.*

Laird does seek to recover "damages of $141,466.25 in lost benefits, plus costs, interest, and attorney's fees." Doc. 32 at 18. However, unlike the plaintiff in *Cook*, Laird identifies the "equitable mechanism" through which her remedy can be awarded by requesting several forms of equitable relief. *See* Doc. 32 at 18. And, as *Cook* points out, other courts dismissing § 1132(a)(3) claims where the plaintiff has "repackaged" legal

claims as equitable ones have done so only after determining that ERISA elsewhere provides the plaintiff with an adequate remedy. *See Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1073–74 (11th Cir. 2004) (holding that, before dismissing a § 1132(a)(3) claim for failure to state a claim, the district court should have considered whether plaintiff's allegations were sufficient to state a claim under § 1132(a)(1)(B)); *Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.2d 1284, 1288 (11th Cir. 2003) ("The central focus of the *Varity* inquiry involves whether Congress has provided an adequate remedy for the injury alleged elsewhere in the ERISA statutory framework.").

At first blush, Laird functionally seeks "to impose personal liability on [the defendants] for a contractual obligation to pay money—relief that was not typically available in equity." *Great-West*, 534 U.S. at 210. Such a request is often considered to be legal relief. *See id.* ("Almost invariably suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages . . . since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.") (internal quotation marks omitted). However, the United States Supreme Court's 2011 opinion in *Amara*[3] expands on the traditional concept of "equitable relief" under § 1132(a)(3). The beneficiary plaintiffs in *Amara*, like Laird, claimed that CIGNA violated its disclosure obligations by omitting and misrepresenting vital information relating to plan changes. *See Amara*, 563 U.S. at 424–32. Concluding that CIGNA's "descriptions of its new plan were significantly incomplete and misled its

---

[3] Even to the extent *Cook* lends any material support to AECOM's argument, *Cook* was decided four years before *Amara*.

employees," the district court reformed the terms of the plan under § 1132(a)(1)(B) to reflect CIGNA's promises and to match the employees' reasonable expectations.[4] *See id.* at 432–34. The Supreme Court held that the district court lacked the authority under § 1132(a)(1)(B) to reform the terms of the plan, but that it could have done so under § 1132(a)(3). *See id.* at 438.

Next, the Supreme Court engaged in a detailed discussion of the district court's remedy, concluding that it closely resembled three types of traditionally equitable relief: reformation, estoppel, and surcharge. *See id.* at 440–42. The power to reform contracts, according to the Court, historically was employed by equity courts to prevent fraud. *Id.* at 440. The equitable doctrine of estoppel strives to place the plaintiff in the same position in which she would have been had the representations been true. *Id.* at 441. And, even though it takes the form of a monetary payment, a surcharge is equitable and was traditionally awarded in the event of losses resulting from a trustee's breach of duty or to prevent unjust enrichment. *Id.* at 441–42. Thus, "contrary to the District Court's fears, the types of remedies the court entered here fall within the scope of the term 'appropriate equitable relief' in § [1132(a)(3)]." *Id.* at 442. Finally, the Court held that a plaintiff would have to show actual harm and causation, and not necessarily "detrimental reliance," to demonstrate an injury. *See id.* at 444–45.

Like the plaintiffs in *Amara*, Laird contends that AECOM both failed to disclose

---

[4] The district court did so under § 1132(a)(1)(B) and not § 1132(a)(3) in part because it was concerned that reformation of the plan would not constitute equitable relief in light of the Supreme Court's holdings in *Mertens* and *Great-West*. *See Amara*, 563 U.S. at 438.

vital plan information and made affirmative misrepresentations concerning the plan's payout. And the district court in *Amara* concluded that CIGNA had violated its disclosure obligations under § 1024(b), which Laird has alleged here. *See id.* at 421. She also claims to have suffered harm as a result of the lack of disclosure and alleges direct causation between the defendants' conduct and her injury. Thus, Laird has pleaded sufficient facts that, if proven, could entitle her to relief similar to that which *Amara* authorizes under § 1132(a)(3).

Recognizing the parallels between Laird's claims and the relief in *Amara*, AECOM maintains that the relevant portion of the Supreme Court's opinion in *Amara* is dictum and cannot be relied upon for the proposition that the district court's remedy in that case constituted equitable relief authorized by § 1132(a)(3). Doc. 46 at 16–17. This argument has been expressly rejected by at least one circuit court of appeals. *See Geralds v. Entergy Servs., Inc.*, 709 F. 3d 448, 452 (5th Cir. 2013) ("Even assuming it is dictum, however, we give serious consideration to this recent and detailed discussion of the law by a majority of the Supreme Court."). This court is similarly reticent to disregard a majority of the Supreme Court—whether or not strictly classified as dictum. This is especially the case when the Supreme Court unambiguously concluded that the "types of remedies the court entered here fall within the scope of the term 'appropriate equitable relief' in § [1132(a)(3)]." *Amara*, 563 U.S. at 442 (quoting 29 U.S.C. § 1132(a)(3)).

While the Eleventh Circuit has yet to analyze the relief sought in a section 1132(a)(3) claim in the wake of the Supreme Court's holding in *Amara*, other circuit courts of appeals have addressed this precise issue. For example, the Ninth Circuit has noted that

*Amara* "held that § 1132(a)(3) authorized equitable relief in the form of plan reformation," in concluding that "[t]he fact that th[e] relief takes a monetary form does not remove it from the category of equitable relief." *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 960 (9th Cir. 2016). Similarly, the Eighth Circuit held that a plaintiff stated a viable breach of fiduciary duty claim under § 1132(a)(3) by alleging that the plan administrator failed to furnish the SPD, and that the surcharge requested was equitable under *Amara*. *See Silva*, 762 F.3d at 722 ("[T]he Supreme Court's decision in *Amara* changed the legal landscape by clearly spelling out the possibility of an equitable remedy under ERISA for breaches of fiduciary obligations by plan administrators."). Other circuits share this view of *Amara*. *See Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 882 (7th Cir. 2013) ("Thus, under [*Amara*, a plaintiff] may seek make-whole money damages as an equitable remedy under section 1132(a)(3) if she can in fact demonstrate that [the defendant] breached its fiduciary duty to her and that the breach caused her damages."); *Geralds*, 709 F.3d 448, 452 (5th Cir. 2013) (concluding that based on the "depth of the Court's treatment of the issue . . . *Amara*'s pronouncements about surcharge as a potential remedy under § [1132(a)(3)] should be followed," even if they could be considered dicta).

Furthermore, at least one court in this district has followed a similar path. In *Poole v. Life Insurance Company of North America*, the plaintiff brought two claims—one for the recovery of lost benefits under § 1132(a)(1)(B) and one for breach of fiduciary duty claim under § 1132(a)(3). *See generally Poole v. Life Ins. Co. of North Am.*, 984 F. Supp. 2d 1179 (M.D. Ala. 2013). However, the plaintiff in *Poole* was willing to concede that he was not entitled to benefits under § 1132(a)(1)(B) and would proceed solely on a breach-

of-fiduciary-duty theory under § 1132(a)(3). *Id.* at 1186. This is, in practical effect, what Laird has done here. Almost identically, the plaintiff in *Poole* claimed that the plan administrator failed to furnish plan information, thus preventing an informed benefits decision. *See id.* at 1187. The *Poole* court concluded that the factual allegations did not support a claim for benefits due under § 1132(a)(1)(B). *Id.* at 1187–88. Finding the proper inquiry to be whether the allegations underlying the § 1132(a)(3) claim could also support a cause of action under § 1132(a)(1)(B), the court concluded that the plaintiff would be left with no remedy if it dismissed his § 1132(a)(3) claim. *Id.* at 1188. Importantly, the plaintiff in *Poole* had also requested relief in the form of an injunction and reformation of the plan. *See id.* ("Mr. Poole cites several Supreme Court cases that have held that ERISA plaintiffs may seek the same equitable remedies that he seeks in a § [1132(a)(3)] claim (*i.e.*, reformation, restitution, and injunction).").

Like the plaintiff in *Poole*, Laird claims that she has suffered a loss due to a failure to disclose required plan information since she and her husband would have elected additional coverage had they been properly informed of the plan's terms. Moreover, Laird has tacitly admitted that she has no claim for benefits due under § 1132(a)(1)(B). Finally, she also seeks relief in the form of an injunction and reformation of the plan's terms, among other requests. Therefore, without a claim under § 1132(a)(1)(B), dismissing Laird's § 1132(a)(3) claim would leave her with no relief at all—a result the Supreme Court and Eleventh Circuit have found to be untenable. *See Poole*, 984 F. Supp. 2d at 1188 (citing *Jones*, 370 F.3d at 1073–74). Indeed, the holding in *Amara* was premised on this theory:

In the present case, it is not difficult to imagine how the failure to provide proper information, in violation of the statute, injured employees even if they did not themselves act in reliance on summary documents—which they might not themselves have seen—for they may have thought fellow employees, or informal workplace discussion, would have let them know if, say, plan changes would likely prove harmful. We doubt that Congress would have wanted to bar those employees from relief.

*Amara*, 563 U.S. at 444.

For these reasons, AECOM's motion to dismiss Count I is due to be denied. The Supreme Court's ruling in *Amara* and the lower courts' interpretation of that opinion provide a clear avenue for Laird to bring a breach-of-fiduciary-duty claim against AECOM under § 1132(a)(3) for an alleged violation of its disclosure obligations.

### 2. *Aetna*

Aetna argues that it cannot be held liable for a breach of fiduciary under § 1132(a)(3) because it is not the plan administrator and was under no duty to provide the Lairds with plan information, nor was it under a duty to correct any purported disclosure violation by AECOM. Doc. 47-1 at 11–12. Aetna also contends that it is a fiduciary of the plan only with respect to the claims-administration process, which "does not make Aetna jointly liable with the Plan Administrator for other purposes." Doc. 17-1 at 16. However, Aetna's arguments are unavailing at this stage of the proceedings. Even accepting Aetna's argument that it is not the plan administrator and cannot be held liable under the *de facto* administrator doctrine, the court concludes that Laird has stated a viable claim against it under § 1132(a)(3).

Laird alleges that Aetna "expressly assumed a plan administrator role in the distribution of the alleged SPD to AECOM/URS employees." Doc. 32 at 23. According to

Laird, even if Aetna was not the plan administrator, it "assumed plan administrator duties" such as the duty to furnish the SPD. Doc. 52 at 4. Thus, Laird has alleged facts which could demonstrate that Aetna was a fiduciary for the purpose of administering and processing claims. *See Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005) ("[F]iduciary status under ERISA is not an all-or-nothing concept, and a court must ask whether a person is a fiduciary with respect to the particular activity at issue.") (citation and internal quotation marks omitted). Indeed, district courts have routinely found that claims asserting a breach of fiduciary duty against a claims administrator under § 1132(a)(3) are viable. *See, e.g.*, *Zisk v. Gannett Co. Income Prot. Plan*, 73 F. Supp. 3d 1115, 1118 (N.D. Cal. 2014) ("In sum, the Court's review of the controlling authorities here does not support dismissal as a matter of law of a claim under section 1132(a)(3) for individual relief on account of a breach of fiduciary duties by a claims administrator such as LINA."); *Poole*, 984 F. Supp. 2d at 1189 (holding that a § 1132(a)(3) claim survives a motion to dismiss where the complaint alleged "that Defendants each owed fiduciary duties to [Plaintiff], that in failing to furnish him with Plan documents they breached their duties, and that he has been harmed [as a result]").

Aetna asks the court to delve into the purported plan documents to declare, at the motion-to-dismiss stage, that Aetna is not a plan administrator and did not owe any fiduciary duties to the Lairds. Yet these very documents reveal a healthy factual dispute as to whether and to what extent Aetna owed the Lairds fiduciary duties and may have violated these duties by failing to furnish the SPD. Indeed, a document attached to Aetna's answer declares that Aetna "shall have discretionary authority to determine whether and to

what extent eligible employees and beneficiaries are entitled to benefits and to construe any disputed or doubtful terms under this Policy, the Certificate or any other document incorporated herein." Doc. 40-1 at 27. An ERISA fiduciary is one who, among other things, "exercises any authority or control respecting management or disposition of [the plan's] assets." 29 U.S.C. § 1002(21)(A). Laird has alleged facts sufficient to demonstrate that Aetna may have exercised authority or control over the disposition of the plan's assets in the course of its duties as the claims administrator. Accordingly, Count I states a viable § 1132(a)(3) claim for breach of fiduciary duty against Aetna.

### 3.     *Sasser*

Sasser maintains that he cannot be held liable for either of Laird's claims because he is not an administrator, a *de facto* administrator, or a fiduciary. Doc. 34 at 8–12. Laird responds that she has pleaded "sufficient facts to show that Sasser was a fiduciary and administrator." Doc. 45 at 10. In reality, whether or not Sasser is classified as a "fiduciary" as that term is defined in the world of ERISA is not determinative of his potential liability for knowing participation in a breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). This debate would bear more relevance had Laird chosen 29 U.S.C. § 1109 as the enforcement mechanism for this claim; however, Laird did not (and could not) bring her claim under § 1109 because that provision authorizes suits only on behalf of the plan itself. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 254 (2008). Instead, Laird has argued that Sasser may be liable under § 1132(a)(3), even as a non-fiduciary, for knowing participation in a fiduciary's breach of duty. Doc. 53 at 1–6. Indeed, Laird has pleaded facts which, if proven to be true, would demonstrate that Sasser knowingly participated in AECOM's

breach of its disclosure obligations. Doc. 32 at 5–6.

Under § 1132(a)(3), a non-fiduciary may be held liable for knowing participation in another's breach of fiduciary duty. *See Harris Trust & Savs. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 244–45 (2000) (holding that 29 U.S.C. § 1132(l) "compels the conclusion that defendant status under [§ 1132(a)(3)] may arise from duties imposed by [§ 1132(a)(3)] itself, and hence does not turn on whether the defendant is expressly subject to a duty under one of ERISA's substantive provisions"); *Will v. Gen. Dynamics Corp.*, 2009 WL 3835883, at *3 (S.D. Ill. Nov. 14, 2009) ("[L]iability hinges upon whether a non-fiduciary knowingly participated in a fiduciary's breach of a substantive provision of ERISA."). Of course, the court has already concluded that Laird has stated a viable § 1132(a)(3) claim against AECOM for breach of fiduciary duty in alleging that AECOM failed to furnish necessary plan information in violation of § 1024(b).

Sasser argues in his supplemental briefing that the Supreme Court limited § 1132(a)(3) liability in *Harris Trust* to parties in interest and he cannot be considered a party in interest under ERISA's statutory scheme. Doc. 50 at 2–3. Sasser, though, has cited no controlling authority for this proposition beyond *Harris Trust* itself, and the court is unaware of any Eleventh Circuit case law on this point. To the extent *Harris Trust* could be considered to have limited liability under § 1132(a)(3) to parties in interest, "[c]ourts have subsequently extended the rationale of *Harris Trust* to non-fiduciaries who are also not parties in interest to the plan." *AirTran Airways, Inc. v. Elem*, 771 F. Supp. 2d 1344, 1350 (N.D. Ga. 2011); *see also Solis v. Couturier*, 2009 WL 1748724, at *4 (C.D. Cal. June 19, 2009) ("When the Supreme Court states that there is no limit on the universe of

possible defendants who knowingly participate in a fiduciary's violation, this Court must conclude that 'no limit' means 'no limit.'") (internal quotation marks omitted). Thus, any discussion of Sasser's party-in-interest status is largely inapposite.[5]

Finally, Sasser maintains that Laird's claim must fail because she has not alleged that Sasser knowingly participated in AECOM's alleged breach of fiduciary duty. Doc. 50 at 3. Sasser goes on to argue that Laird's allegations "demonstrate that Sasser was unaware of the reduction in age until after Mr. Laird's passing" because Sasser stated at the funeral that he had "just realized" that Mr. Laird's benefits reduced at the age of 70. Doc. 50 at 4. Sasser puts the cart before the horse in attempting to litigate the merits of Laird's claim at this stage. Laird has alleged that Sasser misrepresented and omitted information regarding the reduction in benefits, and that, despite coming to the realization that he was mistaken and that the Lairds were unaware of the reduction, Sasser persisted in submitting a claim to Aetna for the reduced amount of benefits. Doc. 32 at 9–10. Whether or not Sasser "knowingly participated" in AECOM's alleged breach of fiduciary duty is a question of fact to be resolved after the parties engage in discovery and a factual record is developed. Certainly, while Sasser's statements at Mr. Laird's funeral could demonstrate a lack of knowledge, they could also have been affirmative misrepresentations employed as a subterfuge. This is a factual dispute that cannot be resolved on a motion to dismiss. *See, e.g.*, *Twombly*, 550 U.S. at 589.

---

[5] Even so, Sasser arguably meets the statutory definition of "party in interest." Included in ERISA's definition of "party in interest" is "a person providing services" to an employee benefit plan, or "an employer any of whose employees are covered by such plan." *See* 29 U.S.C. § 1002(14)(A). It is at least plausible that Laird couple prove that Sasser meets one or both of these definitions.

## IV.  CONCLUSION

For the reasons stated above, it is ORDERED as follows:

1.      The Motion to Dismiss for Plaintiff's Failure to State a Claim filed by AECOM and Sasser (Doc. 34) is DENIED at to Count I and GRANTED as to Count II; and

2.      The Motion for Judgment on the Pleadings filed by Aetna (Doc. 47) is DENIED as to Count I and GRANTED as to Count II.

DONE this 19th day of April, 2017.

                                    /s/ Gray M. Borden
                        UNITED STATES MAGISTRATE JUDGE